UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HARLEYSVILLE MUTUAL INSURANCE COMPANY et al., | ] ] ] | |
| Plaintiffs, | ] ] | |
| v. | ] ] | CV-02-BE-2698-S |
| BIRMINGHAM STEEL CORPORATION, et al., | ] ] ] | |
| Defendants. | ] ] ] ] | |

**MEMORANDUM OPINION**

This case comes before the court on motions for summary judgment from plaintiff Harleysville Mutual Insurance Company (Doc. 21) and intervenor-plaintiff American Home Assurance Corporation (Doc. 23). Having considered the parties' motions, supporting briefs, and evidentiary submissions, the court DENIES the plaintiff's motion and GRANTS IN PART AND DENIES IN PART the intervenor-plaintiff's motion for the reasons discussed below.

**I. Facts**

Before the court is a dispute between plaintiff Harleysville Mutual Insurance Company ("Harleysville") and intervenor-plaintiff American Home Assurance Corporation ("American Home") concerning who will provide a legal defense for Birmingham Steel Corporation ("Birmingham Steel") in a wrongful death suit filed against it.

On September 21, 1999, Jeffcoat Mechanical Services ("Jeffcoat") entered into a contract

to perform maintenance and repairs for Birmingham Steel. This contract contained an indemnity provision wherein Jeffcoat agreed to indemnify Birmingham Steel for claims against Birmingham Steel under certain circumstances. The contract further required that Birmingham Steel be named as an additional insured under Jeffcoat's general liability and excess liability insurance policies.

The contract provides, in relevant part:

> Before a Contractor will be permitted to start work, the Contractor must supply an insurance certificate from an insurance company acceptable to [Birmingham Steel's] Corporate Risk Management Department. The insurance certificate must list [Birmingham Steel] as an additional insured and provide that the coverage is primary for [Birmingham Steel].
>
> The following requirements are the minimum that will be accepted as coverage for contractors performing work on BSC's property. In some situations, additional and/or special coverage may be required.
>
> –Occurrence Form Commercial General Liability with a general aggregate of $1,000,000 per occurrence, including products and completed operations aggregate of not less than $1,000,000 each occurrence...
>
> ...Excess liability extending in excess of all primary policies not less than $5,000,000.

Harleysville Mutual Insurance Company issued to Jeffcoat a general liability policy ("the Harleysville policy") with the effective dates July 1, 2000 through July 1, 2001. This policy included an endorsement adding Birmingham Steel as an insured. The parties do not dispute that Birmingham Steel received and accepted an adequate insurance certificate from Jeffcoat.

The commercial general liability coverage form and endorsements contained in the Harleysville policy provide in pertinent part:

2

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...

***

b.  This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   (2) The "bodily injury" or "property damage" occurs during the policy period.

c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

***

**ADDITIONAL INSURED–OWNERS, LESSEES OR CONTRACTORS - AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A.  **Who is an Insured** (Section II) is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. *Such person or organization is an additional*

*insured only with respect to liability arising out of your ongoing operations performed for that insured.*

\*\*\*

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*\*\*

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A and B of this Coverage Part, our obligations are limited as follows:

    a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

\*\*\*

**AMENDMENT OF OTHER INSURANCE CONDITION OCCURRENCE VERSION**

This endorsement modifies insurance provided under the following:

    **COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)**

Paragraph 4.b of the **Other Insurance Condition - (Section IV - Commercial General Liability conditions)** is replaced by the following:

4. **Other Insurance**

b. **Excess Insurance**

    This insurance is excess over:

\*\*\*

>   (2)   Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

***

(Bold emphasis original; underlined emphasis added).

Harleysville also issued to Jeffcoat a commercial umbrella liability policy with the effective dates July 1, 2000 to July 1, 2001 ("the Umbrella policy"). The Umbrella policy contains a $3 million aggregate limit; a $3 million personal and advertising injury limit; and a $3 million "each occurrence" limit. The Harleysville policy is part of the Umbrella policy's schedule of underlying insurance.

The commercial umbrella liability coverage form and endorsements contained in the Umbrella policy provide in pertinent part:

**SECTION I - COVERAGE A AND COVERAGE B**

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIMIT

***

**1. INSURING AGREEMENT**

We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of:

a. "Bodily injury" or "property damage" covered by this policy and caused by an "occurrence" which occurs during the policy period.

***

**SECTION II - WHO IS AN INSURED**

2.  Each of the following is also an insured:

   f.  Any person or organization for whom you agreed in writing to provide this insurance for operations you perform or facilities you own or use. This insurance is subject to your "applicable underlying limits" for such operations or facilities.

***

**SECTION IV - CONDITIONS**

**10.   OTHER INSURANCE**

This insurance is excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise. This provision does not apply to a policy bought specifically to apply in excess of this insurance.

***

**SECTION V - DEFINITIONS**

3. "Applicable underlying limit" means:

   a.  If the policies of "underlying insurance" apply to the "occurrence" or "offense," the greater of:

      (1)  The amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced by payment of claims or defenses; or

      (2)  The "retained limit" shown in the Declarations; or

   b.  If the policies of "underlying insurance" do not apply to the "occurrence" or "offense," the amount stated in the Declarations as the "retained limit."

   The limits of insurance in any policy of "underlying insurance" will apply even if:

6

    a.  The "underlying insurer" claims the insured failed to comply with any condition of the policy; or

    b.  The "underlying insurer" becomes bankrupt or insolvent.

American Home issued to Birmingham Steel a general liability policy with the effective dates of July 1, 2000 through July 1, 2001 ("the American Home policy"), subject to a self-insured retention of $100,000. The American Home policy provides in pertinent part:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

          ***

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

          ***

  4.  **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

    a.  Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

        b.     Excess Insurance

This insurance is excess over:

***

      (2)    Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

On November 22, 2000, Dennis Morrison, an employee of Jeffcoat, was in the "melt shop" at Birmingham Steel's plant to take some measurements for work that was going to be done the following day on a crane cab cooling unit. As the result of alleged negligence on the part of Birmingham Steel and Mr. Ron Mickle, an employee of Birmingham Steel, Mr. Morrison fell from the crane, and died from his injuries several hours later.

On September 7, 2001, Christine Morrison, the personal representative of Dennis Morrison's estate, filed a wrongful death suit against Birmingham Steel and Ron Mickle in the Circuit Court of Jefferson County, Alabama. While the liability for Mr. Morrison's death is disputed, the parties do not dispute that he was acting in the course of his employment with Jeffcoat on Birmingham Steel's premises when he fell.

Birmingham Steel tendered its defense of the *Morrison* suit to Harleysville. Harleysville is currently defending the suit under a reservation of rights. Harleysville filed the present suit on November 4, 2002 seeking, *inter alia*, a declaration that it owes Birmingham Steel and Mr. Mickle neither a defense nor indemnity in the *Morrison* suit. On April 16, 2003, American

Home filed a motion to intervene, which was granted.[1] On May 22, 2003, American Home filed an amended complaint seeking a declaration that (1) Harleysville has the primary coverage for Birmingham Steel regarding the Morrison suit; (2) American Home's coverage is excess of that afforded by Harleysville; (3) the Umbrella Policy should be exhausted before American Home's excess coverage applies; and (4) Harleysville shall hereafter continue to defend Birmingham Steel in the *Morrison* suit. The case now comes before the court on the parties' cross-motions for summary judgment. Both motions ask the court to decide which insurance company is Birmingham Steel's primary insurer for the purposes of the *Morrison* suit.

## II. Discussion

*A. Birmingham Steel's Status Under the Harleysville Policy*

The first issue to be decided by the court is whether Birmingham Steel is an "additional insured" under the terms of the Harleysville policy. American Home provides several arguments in support of an affirmative answer to this question. First, the Birmingham Steel-Jeffcoat contract provided that Jeffcoat had to supply an acceptable insurance certificate to Birmingham Steel. The certificate had to list Birmingham Steel as an additional insured and provide that coverage is primary for Birmingham Steel. Both of these conditions were met.

Second, the "Additional Insured" section of the Harleysville policy provides an endorsement to the policy, which modifies the definition of "who is an insured" to include "any person or organization...[that has] agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." Because the contract between

---

[1] In reality, American Home should be aligned as an intervenor-defendant, as its interests are more similar to its insured. Likewise, its intervenor claim is best characterized as a counterclaim.

Birmingham Steel and Jeffcoat clearly mandates such a status as a prerequisite to performance, this endorsement demonstrates that Birmingham Steel is indeed an additional insured.

Harleysville, in response, refers the court to another sentence in the endorsement: "Such person or organization is an additional insured only with respect to liability **arising out of your ongoing operations** performed for that insured" (emphasis added). Both parties acknowledge that no Alabama case law interprets these words, and propose to the court different approaches as to how this sentence should be read. Harleysville asks the court to give the words in this phrase "their customary and normal meaning...constru[ing] the policy in a manner consistent with the interpretations that an ordinary person would place on the policy's language." *Pritchett v. State Farm Mut. Auto Ins. Co.*, 834 So.2d 785 (Ala. Civ. App. 2002) (citations and quotations omitted). Employing this canon of construction, Harleysville argues that the Morrison accident did *not* "arise out of the ongoing operations" of Jeffcoat as required for coverage under the Harleysville policy. Rather, the accident arose from the negligent operation of a crane by a Birmingham Steel employee.

American Home disputes this "ordinary" reading of the language, arguing Morrison's accident did occur during the "ongoing operations" of Jeffcoat: Morrison was taking measurements for Jeffcoat so it could replace the cooling unit in Birmingham Steel's cab. American Home rejects the notion that the language "arising out of...ongoing operations" means that Harleysville's coverage of Birmingham Steel is triggered only when Jeffcoat was the cause of the accident at issue, offering that had the Harleysville policy drafters intended such a limited interpretation, they could have employed express terms to that effect.

American Home also suggests that the court look to the construction other jurisdictions

10

have given this language. In particular, American Home cites to *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 454 (Tx. App. 1999), which represents what American Home considers to be the "majority view" of the construction of this language:

> [F]or liability to 'arise out of operations' of a named insured it is not necessary for the named insured's acts to have 'caused' the accident; rather, it is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured.

*Id.* American Home argues that this court should look to other jurisdictions for guidance on questions of first impression, as Alabama courts have consistently done in the past. *See e.g., Knight v. Beverly Health Care Bay Manor Health Care Center*, 820 So. 2d 92 (Ala. 2001). Harleysville, in reply, argues that the court need not look to other jurisdictions when the endorsement language is already clear.

The court agrees with American Home and the *Trident* court. Dennis Morrison's injury clearly arose from Jeffcoat's ongoing operations at the Birmingham Steel facility; thus, Birmingham Steel's liability from that accident is covered by the terms of the Harleysville policy. Harleysville's rationale reads more into the language than a "customary and normal" reading can reasonably bear, and has no support from precedent nor common sense. Nothing in the language of the Harleysville policy suggests the *fault* of an entity is to be considered when deciding whether that entity is an additional insured. Instead, the plain language of the policy requires that the liability of Birmingham Steel arose from the ongoing work of Jeffcoat, not that the liability arise out of Jeffcoat's *negligence*. The court finds that Birmingham Steel is an "additional insured" under the terms of the Harleysville Policy.

11

B. *Coverage for the Morrison Suit*

The court also finds that the injury and death of Dennis Morrison is a "bodily injury" caused by an "occurrence"[2] that took place within the policy year and "coverage territory," as those terms are defined in the Harleysville policy. Thus, by the terms of its Insuring Agreement, the Harleysville policy applies to the events in the Morrison suit, and Harleysville has the "right and duty to defend" Birmingham Steel in that suit. Whether Harleysville has a duty to indemnify will depend upon the outcome of the *Morrison* suit.

C. *Which Insurance is Primary?*

The court's conclusion that Birmingham Steel is an "additional insured" under the Harleysville Policy, however, does not end the court's inquiry. The court must still determine which of the insurance policies that cover Birmingham Steel is primary. "Because so many different kinds of insurance coverage exist...overlapping coverage is fairly common. To reduce or eliminate the liability of the insurer where the insured possesses other coverage of the same risk, almost all [insurance policies] have 'other insurance' clauses. These clauses attempt to prioritize the coverage of two or more applicable policies." Robert H. Jerry, II, Understanding Insurance Law, § 97 at 625 (1996). Accordingly, the court's attention turns to the relevant 'other insurance' clauses in the American Home and Harleysville policies to determine which is primary.[3]

---

[2] The Harleysville policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Mr. Morrison's injury, and resulting death, was certainly the result of an accident.

[3] The court has also considered Harleysville's arguments concerning the relationship between escape clauses and excess clauses in the Harleysville and American Home policies. The court agrees with Harleysville concerning the operation of these clauses in relation to one another, *see, e.g.*, Robert H. Jerry, II, Understanding

The 'other insurance' clause in the Harleysville policy only addresses its *named* insured, Jeffcoat, and not additional insureds. The Harleysville 'other insurance' clauses provided that its coverage is primary unless subparagraph b. applies. Subparagraph b., as amended by endorsement, states that its coverage is excess over "[a]ny other primary insurance available to *you* covering liability for damages arising out of the premises or operations for which *you* have been added as an additional insured by attachment of an endorsement" (emphasis added). Under the Harleysville policy, "you" is defined as the named insured, here Jeffcoat.[4] Thus, this clause only provides that the Harleysville policy would be excess to *Jeffcoat* when *Jeffcoat* has been added as an insured under another policy providing coverage for liability "arising out of the premises or operations for which [Jeffcoat] ha[s] been added as an additional insured by attachment of an endorsement." Because this clause does not address Birmingham Steel, and thus has no bearing on which insurance policy provides primary coverage to Birmingham Steel, the court finds the 'other insurance' clause in the Harleysville policy inapplicable to the instant analysis and does not affect Harleysville's position as primary insurer for Birmingham Steel.

The American Home policy deems itself primary to all other insurance policies *except*

---

Insurance Law, § 97 (1996), but disagrees with Harleysville about the actual presence of an escape clause in the Harleysville policy. That policy provides that "this insurance is excess over any other primary insurance available to **you** covering liability for damages arising out of the premises or operation for which **you** have been added as an additional insured by attachment of an endorsement" (emphasis added). That policy also defines "you" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." The only Named Insured on the Harleysville policy is *Jeffcoat*–not Birmingham Steel. Thus, the aforementioned Harleysville provision only provides that the policy would be excess when *Jeffcoat* is an additional insured under a policy providing coverage for liability "arising out of the premises or operations for which [*Jeffcoat*] ha[s] been added as an additional insured by attachment of an endorsement." Such is not the case here. Both clauses cited by Harleysville are "excess clauses," and only the American Home policy's excess clause is relevant in this case. While Harleysville is correct about the legal relationship between escape clauses and excess clauses, no escape clauses are before the court, and thus Harleysville's argument is without merit.

[4] *See* note 3, *supra* ("you" in the Harleysville policy is defined to mean the Named Insured).

when its named insured, Birmingham Steel, has available "other primary insurance...for damages arising out of the premises or operations for which *you* ["named insured"] have been added as an additional insured by attachment of an endorsement" (emphasis added). Therefore, if Birmingham Steel has coverage under another policy for liability for damages arising out of operations for which *it* was added as an additional insured, the American Home policy becomes excess to that policy.

No one disputes that the Harleysville policy deems itself "primary" for its insureds except when 'other insurance' clauses operate otherwise. The court has already decided that (1) Birmingham Steel is an "additional insured" under the Harleysville policy; (2) the allegations of the *Morrison* suit fall with the scope of coverage; (3) the damages in question arose out of Jeffcoat's operations; and (4) the excess clause in the Harleysville policy does not affect Birmingham Steel. Accordingly, by the terms of its 'other insurance' excess clause, the American Home policy is *not* primary for Birmingham Steel in this instance. Because the Harleysville policy clearly states it is primary to its insureds, and because that policy's 'other insurance' excess clause only operates as to *Jeffcoat*, and not Birmingham Steel, the court finds the Harleysville policy's coverage is primary to Birmingham Steel in this instance. Thus, the Harleysville policy coverage limits must be exhausted before American Home's coverage applies.

D. *Umbrella Policy*

Having decided that Birmingham Steel is an "additional insured" under the Harleysville policy, and having decided the Harleysville policy to be primary, the court now must decide

whether Birmingham Steel is also an "additional insured" under the terms of the Umbrella policy.

The Umbrella policy defines an "insured" as "any person or organization for whom [the Named Insured] agreed in writing to provide this insurance for operations you perform or facilities you own or use." The court finds that this contractual requirement has been met. The Birmingham Steel-Jeffcoat contract requires Jeffcoat to provide excess insurance, subject to certain limits; as discussed above, Harleysville agreed in writing to provide coverage under the Harleysville policy for Birmingham Steel; and the Harleysville policy is part of the Umbrella policy's schedule of underlying insurance. Harleysville does not oppose the specific applicability of the Umbrella policy, presumably relying on its underlying "arising out of"defense, also discussed above.

The court disagrees, however, with American Home's assertion that the limits of the Umbrella policy must be exhausted prior to triggering coverage under the American Home policy in this case. The Umbrella policy's 'other insurance' clause reads "this insurance is *excess* over *any other valid and collectible insurance, whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise.* This provision does not apply to a policy brought specifically to apply in excess of this insurance." (Emphasis added). The American Home policy may be excess over the Harleysville policy, *supra*, but it is still "valid and collectible insurance." Further, no evidence before the court suggests that the American Home policy was purchased "specifically to apply in excess" of the Umbrella policy.

The American Home policy's relevant 'other insurance' clause only submits that it is to be excess over "any other *primary* insurance available to you[.]" (Emphasis added). Unlike

15

the Harleysville policy, however, the Umbrella policy by its very nature and purpose is not primary insurance. Thus, while Birmingham Steel is an insured under the Umbrella policy, the Umbrella policy applies only in excess of the American Home policy.

### III. Conclusion

For all these reasons, the court DENIES the plaintiff's motion and GRANTS IN PART AND DENIES IN PART the intervenor-plaintiff's motion. A separate, final order consistent with this opinion will be entered contemporaneously.

DONE and ORDERED this 28th day of May, 2004.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE